SHIMKO, Appellant,

v.

LOBE et al., Appellees.*

[Cite as Shimko v. Lobe, 152 Ohio App.3d 742, 2003-Ohio-2200.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 02AP–872.

Decided May 1, 2003.

* Reporter's Note:  An appeal to the Supreme Court of Ohio is pending in case No. 2003-1017.

744

Shimko & Piscitelli and Timothy A. Shimko, for appellant.

George F. Lonjak, for appellee Thomas G. Lobe.

Mark P. Herron, for appellees John Ricotta, Robert Neumann, and Eric Nickerson;  Patrick J. Holland, pro se.

Jones, Day, Reavis & Pogue, Fordham E. Huffman and J. Todd Kennard, for appellee Cleveland Bar Association;  Eugene P. Whetzel, for appellee Ohio State Bar Association.

PEGGY BRYANT, Judge.

{¶ 1} Plaintiff-appellant, Timothy A. Shimko, appeals from a judgment of the Franklin County Court of Common Pleas in favor of defendants-appellees, Thomas G. Lobe ("Lobe"), the Cleveland Bar Association ("CBA"), and the Ohio State Bar Association ("OSBA"), in a refiled lawsuit challenging the constitutionality of the Ohio Code of Professional Responsibility Disciplinary Rule 2–107(B), which requires binding arbitration of fee disputes between attorneys from different firms.  The trial court concluded that DR 2–107(B) is a reasonable restriction on the practice of law and is therefore constitutional.  Plaintiff also appeals from the trial court's judgment dismissing plaintiff's civil conspiracy claims against defendants-appellees, Lobe, John Riccota, Patrick Holland, Robert Neumann, and Eric Nickerson.

{¶ 2} Plaintiff's initial lawsuit arose out of several fee disputes between plaintiff and Lobe, both practicing attorneys in Ohio. In December 1995, in response to Lobe's request to set the fee disputes for mandatory and binding arbitration pursuant to DR 2–107(B), the CBA notified plaintiff and Lobe that it was accepting jurisdiction over part of the fee disputes.  In 1996, plaintiff filed suit in the Franklin County Court of Common Pleas, seeking a declaration that DR 2–107(B) is unconstitutional on various grounds.

{¶ 3} In 1997, this court affirmed the trial court's judgment granting summary judgment against plaintiff's claims that DR 2–107(B) is unconstitutional due to violations of due process, equal protection, and open access to the courts, the latter claim being characterized by this court as one of impairment of contractual

rights. See *Shimko v. Lobe* (1997), 124 Ohio App.3d 336, 706 N.E.2d 354. This court, however, reversed the trial court's judgment granting summary judgment against plaintiff's claim that DR 2–107(B) violates a state and federal right to a jury trial. Id. at 347–348, 706 N.E.2d 354. Finding that no evidence had been presented and that no findings had been made in the trial court on the reasonableness of the rule in eliminating the right to a jury trial in attorney-to-attorney fee disputes, this court remanded the matter to the trial court for a hearing to determine the reasonableness of the rule in that respect. Id.

{¶ 4} The CBA and OSBA filed discretionary appeals and plaintiff filed a cross-appeal of this court's decision. The Ohio Supreme Court sua sponte dismissed plaintiff's cross-appeal for failure to prosecute, and did not allow the discretionary appeal of the CBA and OSBA. *Shimko v. Lobe* (1998), 81 Ohio St.3d 1450, 1502, 690 N.E.2d 545, 81 Ohio St.3d 1502, 691 N.E.2d 1061. Upon remand to the trial court, plaintiff voluntarily dismissed the action before a hearing was held on the sole issue to be resolved.

{¶ 5} On April 5, 1999, plaintiff refiled a complaint seeking a declaratory judgment that DR 2–107(B) is invalid and unenforceable because it violates the Ohio and United States Constitutions. The refiled complaint presents claims virtually identical to those asserted in the initial lawsuit, including those disposed of in the earlier appeal, and presents two additional claims: (1) Lobe was "of counsel" in plaintiff's firm and therefore DR 2–107(B) does not apply to their fee dispute (Count X), and (2) the individual defendants engaged in an act constituting civil conspiracy against plaintiff (Count XI). The refiled case includes the same parties as the initial lawsuit, with Riccota, Holland, Neumann, and Nickerson added as party defendants. Pursuant to defendants' motions, the trial court granted summary judgment against all of plaintiff's claims except his claim that DR 2–107(B) violates plaintiff's right to a jury trial. Thus, remaining for resolution were Count I, alleging that DR 2–107(B) violates plaintiff's right to a jury trial provided in the Ohio Constitution, and Count VII, alleging the same violation under the United States Constitution.

{¶ 6} Pursuant to this court's remand, a hearing was held before a magistrate on April 17 and 18, 2000, for the sole purpose of gathering evidence on whether DR 2–107(B) is a reasonable restriction of an attorney's right to a jury trial in a fee dispute with another attorney from a different firm. In a decision issued September 13, 2000, setting forth findings of fact and conclusions of law, the magistrate found plaintiff's claim that DR 2–107(B) denied him the right to a jury trial to be without merit and recommended that the trial court find DR 2–107(B) constitutional as a reasonable restriction on the practice of law.

{¶ 7} Following the magistrate's decision, the trial court denied plaintiff leave to amend the complaint to conform to the evidence. On August 13, 2001, the trial

court issued a decision adopting the magistrate's decision in full, with one modification to a finding of fact. The trial court journalized a judgment entry on September 12, 2001, ruling that DR 2–107(B) is a reasonable restriction on the practice of law and is therefore constitutional.

{¶ 8} Plaintiff appealed from the trial court's judgment, but because the judgment had not disposed of Lobe's pending counterclaim for abuse of process, this court dismissed the appeal, finding subject-matter jurisdiction lacking because there was no final appealable order in the case. *Shimko v. Lobe* (Apr. 25, 2002), Franklin App. No. 01AP–1113, 2002 WL 723797. The judgment subsequently became a final appealable order upon Lobe's voluntarily dismissing his counterclaim.

{¶ 9} Plaintiff appeals, assigning the following errors:

{¶ 10} "1. The trial court erred in adopting the magistrate's findings of fact and conclusions of law with respect to Shimko's claim that DR 2–107(B) denied his right to a trial by jury.

{¶ 11} "2. The trial court erred in granting defendant Ricotta's, Neumann's, Nickerson's and Holland's motion for summary judgment dismissing Count XI of plaintiff's complaint.

{¶ 12} "3. The trial court erred in granting defendant bar associations' motion for summary judgment as to Counts II through VI and VII [sic, VIII] through X of the complaint.

{¶ 13} "4. The trial court erred in overruling plaintiff's motion for leave to amend complaint to conform to the evidence and/or to introduce additional evidence."

{¶ 14} In his first assignment of error, plaintiff asserts that the trial court erred in finding that DR 2–107(B) is reasonable and therefore constitutional; plaintiff contends that it deprives plaintiff of his right to a trial by jury under Section 5, Article I of the Ohio Constitution and the Seventh Amendment to the United States Constitution.

{¶ 15} DR 2–107 provides:

{¶ 16} "(A) Division of fees by lawyers who are not in the same firm may be made only with the prior consent of the client and if all of the following apply:

{¶ 17} "(1) The division is in proportion to the services performed by each lawyer or, if by written agreement with the client, all lawyers assume responsibility for the representation;

{¶ 18} "(2) The terms of the division and the identity of all lawyers sharing in the fee are disclosed in writing to the client;

{¶ 19} "(3) The total fee is reasonable.

{¶ 20} "(B) *In cases of dispute between lawyers arising under this rule, fees shall be divided in accordance with mediation or arbitration provided by a local bar association. Disputes that cannot be resolved by a local bar association shall be referred to the Ohio State Bar Association for mediation or arbitration.*" (Emphasis added.)

{¶ 21} Plaintiff first contends that the right to a trial by jury, as a specifically enumerated right in the Constitution, is a fundamental right, and therefore DR 2–107(B) is subject to a strict-scrutiny rather than a rational-basis analysis.

{¶ 22} Plaintiff's arguments were addressed in this court's earlier opinion, wherein we concluded that "this case does not involve the deprivation of a fundamental right" and that DR 2–107(B) is not subject to a strict-scrutiny standard but need withstand only the "rational-basis test." *Shimko,* supra, 124 Ohio App.3d at 344, 706 N.E.2d 354. Explaining that no one has an absolute right to practice law and the right to a jury trial is a right that may be waived, we stated that " 'the State may impose reasonable conditions and limitations upon those who wish to exercise [the] privilege [of practicing law].' " Id. at 347, 706 N.E.2d 354, quoting *Kelley Drye & Warren v. Murray Industries, Inc.* (D.C.N.J. 1985), 623 F.Supp. 522, 527. As we determined, *"[t]he issue then is whether or not the rule at issue is reasonable and, therefore, [plaintiff] should be bound by it."* (Emphasis added.) Id.

{¶ 23} In the absence of findings regarding reasonableness, we further stated that "by [attorneys] being subject to the Code of Professional Responsibility, a jury trial has been validly waived in this case. However, a hearing on the reasonableness of that rule is mandated to determine that issue. *If the condition and waiver of a jury trial predicated on DR 2–107 is reasonable, then the trial court acted properly* [in ruling that DR 2–107(B) is not unconstitutional]. However, without a record to review, we have no factual basis to assess the reasonableness of this rule and the propriety of the trial court's ruling. Our only recourse is to remand to the trial court for a hearing to determine the rule's reasonableness in that respect." (Emphasis added.) Id. at 347–348, 706 N.E.2d 354.

{¶ 24} Despite assertions by plaintiff to the contrary, this court's decision on the legal questions involved became the "law of the case" for subsequent proceedings, including the hearing held on remand. The law-of-the-case doctrine " 'provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.' " *In Defense of Deer v. Cleveland Metroparks* (2000), 138 Ohio App.3d 153, 161, 740 N.E.2d 714, quoting

*Nolan v. Nolan* (1984), 11 Ohio St.3d 1, 3, 11 OBR 1, 462 N.E.2d 410. "[T]he doctrine functions to compel trial courts to follow the mandates of reviewing courts. Thus, where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law." (Citations omitted.) *Nolan,* 11 Ohio St.3d at 3–4, 11 OBR 1, 462 N.E.2d 410. "A trial court may not vary the mandate of an appellate court, but is bound by that mandate on the questions of law decided by the reviewing court." *Transamerica Ins. Co. v. Nolan* (1995), 72 Ohio St.3d 320, 323, 649 N.E.2d 1229.

{¶ 25} Accordingly, the trial court was bound by the law of the case doctrine to adhere to this court's legal determinations in *Shimko,* including this court's determination that DR 2–107(B)'s requirement of binding arbitration of fee disputes between attorneys from different firms does not unconstitutionally deprive plaintiff of his right to a trial by jury if evidence presented at the hearing on remand shows that the rule is reasonable.

{¶ 26} Plaintiff nonetheless asserts a presumption arises that DR 2–107(B) is invalid because it interferes with the right to a jury trial. Plaintiff therefore contends that defendants, not plaintiff, had the burden to prove the rule's constitutionality but did not carry that burden at the evidentiary hearing held pursuant to this court's mandate. Whether the burden is on plaintiff or defendants, we need not determine because, even if the burden rests with defendants, they have carried that burden.

{¶ 27} During the two-day hearing on whether DR 2–107(B) is a reasonable restriction on those who practice law in Ohio, the bar associations presented evidence in the form of exhibits and offered testimony from three expert witnesses who have extensive experience and expertise in the field of legal ethics and professional responsibility. The witnesses either were involved in the promulgation of DR 2–107(B) or have had extensive professional experience with the rule's impact on fee disputes between attorneys.

{¶ 28} According to the bar associations' witnesses, fee disputes between attorneys were identified as a problem prior to DR 2–107(B)'s promulgation. In particular, major areas of concern were (1) the maintenance of client confidences and secrets during a fee dispute between attorneys, and (2) damage in public esteem for the legal profession resulting from attorneys' lawsuits over fees.

{¶ 29} The evidence presented at the hearing demonstrates that the arbitration and mediation provision of DR 2–107(B) helps to preserve the confidentiality of attorney-client communication and resulting privileges. The bar association witnesses uniformly testified that a central feature of the practical effect of DR 2–107(B) is that fee disputes are resolved in a setting in which client confidences and secrets are not publicly disclosed. Although an attorney may reveal client

confidences to the extent necessary to collect a fee, DR 4–101(C)(4), the privacy of the confidential proceedings is a preferable place for such disclosure, particularly when the client is not a party to the dispute.

{¶ 30} The bar association witnesses further testified that DR 2–107(B) helps to fulfill the goal of promoting the public's image of the bar because it requires that certain fee disputes between attorneys be resolved in the nonpublic setting of mediation or arbitration, rather than "the tawdry spectacle of lawyers fighting over the carcass of a fee" in a courtroom. (Sept. 13, 2000 Magistrate Decision.) One witness testified that the rule also helps to avoid a situation where an attorney not only sues another attorney to collect his fee but brings the client into the lawsuit and thus forces the client to hire yet another attorney to represent the client in a fight between two attorneys who had represented the client.

{¶ 31} Finally, evidence was presented that DR 2–107(B)'s binding arbitration provision expedites the resolution of fee disputes. One of the expert witnesses testified that attorney fee disputes under DR 2–107(B) typically may be resolved in 90 to 120 days, whereas fee disputes in court often take one to three years to resolve. Further evidence demonstrated that the flexibility of arbitration proceedings, which may be conducted based on written submissions and deposition transcripts, serves to lessen a client's investment of time and emotion in an arbitration proceeding than would be the case in a civil action.

{¶ 32} Based on the evidence presented at the hearing to determine the reasonableness of DR 2–107(B), we conclude that the compulsory arbitration and mediation provision of the rule is a reasonable restriction on those who practice law in Ohio. DR 2–107(B) provides an effective method of protecting client confidences and secrets and of achieving the goal of "expeditiously resolving fee disputes between attorneys in a manner that does not erode public confidence in the legal profession." *Shimko*, 124 Ohio App.3d at 344–345, 706 N.E.2d 354. In being admitted to the practice of law in Ohio, plaintiff agreed to be bound by the Code of Professional Responsibility. See Gov.Bar R. IV(1); *Shimko*, supra, at 347, 706 N.E.2d 354. Under DR 2–107(B) of that code, attorneys admitted to the practice of law in Ohio, including plaintiff, agree to have a "dispute between lawyers arising under this rule" submitted to mediation or arbitration. By doing so, they have waived the right to a jury trial in fee disputes.

{¶ 33} Our decision today is in accord with courts in other jurisdictions which have encountered similar constitutional challenges to court rules that require attorney fee arbitration. See *In re LiVolsi* (1981), 85 N.J. 576, 587–591, 428 A.2d 1268 (determining attorneys in New Jersey never had an absolute right to have a fee dispute with a client decided by a jury even in the absence of compulsory arbitration, and recognizing that such a right would undermine the New Jersey Supreme Court's constitutional authority to regulate the bar); *Kelley Drye &*

*Warren v. Murray Industries., Inc.* (D.N.J.1985), 623 F.Supp. 522 (holding that by practicing law in the state, law firm agrees to be bound by the rules of the New Jersey Supreme Court providing for compulsory arbitration in attorney-client fee disputes, whereby the firm voluntarily gives up its right to jury trial in fee disputes); *Guralnick v. Supreme Court of New Jersey* (D.N.J.1990), 747 F.Supp. 1109, affirmed without opinion (C.A.3, 1992), 961 F.2d 209 (agreeing with *Kelley Drye* that the privilege of practicing law in New Jersey subjects an attorney to the imposition of reasonable conditions and limitations, including the forfeiture of the right to a jury trial if a client elects to arbitrate a fee dispute); *Anderson v. Elliott* (Me.1989), 555 A.2d 1042, certiorari denied, 493 U.S. 978, 110 S.Ct. 504, 107 L.Ed.2d 507 (holding a rule of the Maine Supreme Court establishing binding arbitration of attorney-client fee disputes is not unconstitutional where the rule is reasonable and attorneys who practice law in the state agree to be bound by the court's rules regulating the practice of law). We note Ohio's constitutional provision regarding the right of trial by jury is similar to those in New Jersey's and Maine's Constitutions. See and compare, Section 5, Article I, Ohio Constitution with Paragraph 9, Article I, New Jersey Constitution (1947), and Section 20, Article I, Maine Constitution.

{¶ 34} Plaintiff contends that *LiVolsi* and *Anderson* are inapplicable because they involve attorney-client fee disputes rather than fee disputes between attorneys. The concerns in those cases, however, mirror the concerns in this case, and the plenary constitutional power of the Ohio Supreme Court relating to the practice of law in this state is at least as extensive as the courts in the above-cited cases. See Section 2(B)(1), Article IV, Ohio Constitution; cf. Paragraph 3, Section II, Article VI, New Jersey Constitution (1947); Section 1, Article VI, Maine Constitution.

{¶ 35} Indeed, the argument in favor of compulsory arbitration for fee disputes between attorneys is even stronger than that for attorney-client fee disputes. In being granted the privilege to practice law, attorneys become members of a regulated profession where they agree to waive certain rights available to the public at large and agree to be bound by the rules of the profession. Clients, as members of the public, are not similarly bound by restrictions placed on the members of the profession. Accordingly, if binding arbitration for attorney-client fee disputes is constitutional in principle, then binding arbitration for attorney-to-attorney fee disputes is constitutional in both principle and as applied here, where its reasonableness has been established.

{¶ 36} Plaintiff further argues that the cases cited above are inapposite because there was a "factual basis" in those cases to support a rule requiring binding arbitration of attorney fee disputes. Plaintiff asserts that no factual basis supports promulgation of DR 2–107(B) because "no studies or surveys were

undertaken, not even a newspaper was read in preparation for the drafting of the challenged disciplinary rule."

{¶ 37} Plaintiff's argument is not well founded. First, plaintiff cites no authority that a study or survey is required to identify public interests when a court is deciding the constitutionality of a provision. See, e.g., *State ex rel. Purdy v. Clermont Cty. Bd. of Elections* (1997), 77 Ohio St.3d 338, 344–345, 673 N.E.2d 1351 (listing various public interests without citing any public studies or surveys). Second, the evidence presented at the evidentiary hearing confirmed this court's statement in *Shimko* that a "legitimate state interest" exists in "expeditiously resolving fee disputes between attorneys in a manner that does not erode public confidence in the legal profession." Id. at 344–345, 706 N.E.2d 354.

{¶ 38} Plaintiff next contends that the Ohio Supreme Court does not have the authority to delegate judicial authority and create a separate "tribunal" to resolve attorney fee disputes. "Tribunal" apparently refers to the mediation and arbitration proceedings authorized by DR 2–107(B).

{¶ 39} The Supreme Court has not unlawfully delegated judicial authority to resolve fee disputes. As noted, by practicing law in this state plaintiff has agreed to be bound to the Code of Professional Responsibility, including DR 2–107(B)'s provisions. His "agreement" to submit certain fee disputes to mediation or arbitration gives the mediators or arbitrators their authority to resolve the fee disputes. See, generally, *Huffman v. Huffman*, Franklin App. Nos. 02AP–101 and 02AP–698, 2002-Ohio-6031, 2002 WL 31466435, at ¶ 25 ("arbitrators derive their authority to resolve disputes from the parties' agreement to have a matter arbitrated"), and *Council of Smaller Enterprises v. Gates, McDonald & Co.* (1998), 80 Ohio St.3d 661, 665, 687 N.E.2d 1352.

{¶ 40} Finally, plaintiff claims that DR 2–107(B) infringes his right to a jury trial under the Seventh Amendment to the United States Constitution, as alleged in Count VII of the refiled complaint. The United States Supreme Court has held that "the 7th Amendment applies only to proceedings in courts of the United States, and does not in any manner whatever govern or regulate trials by jury in state courts." *Minneapolis & St. Louis R. v. Bombolis* (1916), 241 U.S. 211, 217, 36 S.Ct. 595, 60 L.Ed. 961. In accord, *LiVolsi* at 587, 428 A.2d 1268, fn. 7; *Anderson* at 1043, fn. 1; *Nodvin v. State Bar of Georgia* (2001), 273 Ga. 559, 561, 544 S.E.2d 142. Because plaintiff argues that he is entitled to a jury trial in a *state* court, his federal right to a trial by jury is not implicated. Accordingly, the trial court did not err in dismissing Count VII of the refiled complaint. Plaintiff's first assignment of error is overruled.

{¶ 41} In his second assignment of error, plaintiff asserts that the trial court erred in granting summary judgment against plaintiff on Count XI of plaintiff's

complaint, a civil conspiracy claim wherein plaintiff alleged that defendants Lobe, Ricotta, Holland, Neumann, and Nickerson conspired to file a "frivolous lawsuit" to cause economic harm to plaintiff and harm to his business reputation. Plaintiff contends that the trial court erroneously found plaintiff's civil conspiracy claim barred by res judicata and collateral estoppel.

{¶ 42} The allegedly "frivolous lawsuit" referred to in the civil conspiracy claim is a lawsuit Neumann and Nickerson, plaintiff's former clients, filed in Cuyahoga County for breach of a contingency fee contract and conversion ("the *Neumann* case"). The Cuyahoga County Common Pleas Court granted plaintiff, there defendant, summary judgment on the claims against him. Plaintiff, as a defendant, then moved for sanctions pursuant to R.C. 2323.51 and Civ.R. 11 against Neumann and Nickerson and their counsel, Holland and Ricotta. In support of his sanctions motion, plaintiff claimed that the filing of the *Neumann* case against him was a "frivolous and vexatious lawsuit," arguing that "[t]he real purpose of this litigation is to assist Mr. Thomas Lobe in litigation that Mr. Shimko has against Mr. Lobe[.]" (*Neumann* case, July 21, 1998 motion for sanctions.) The common pleas court denied the motions for sanctions, and the Eighth District Court of Appeals affirmed the denial. *Neumann v. Shimko* (Mar. 16, 2000), Cuyahoga App. No. 75940, 2000 WL 284220.

{¶ 43} "The doctrine of *res judicata* involves both claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as collateral estoppel)." *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 381, 653 N.E.2d 226. Under the doctrine of res judicata, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." Id. at syllabus. "Transaction" has been defined as a "common nucleus of operative facts." Id. at 382, 653 N.E.2d 226, quoting 1 Restatement of the Law 2d, Judgments (1982) 198–199, Section 24, Comment *b*. " 'It has long been the law in Ohio that "an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were *or might have been* litigated in a first lawsuit." ' * * * 'The doctrine of *res judicata* requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it.' " (Emphasis sic.) Id., quoting *Natl. Amusements, Inc. v. Springdale* (1990), 53 Ohio St.3d 60, 62, 558 N.E.2d 1178, quoting *Rogers v. Whitehall* (1986), 25 Ohio St.3d 67, 69, 25 OBR 89, 494 N.E.2d 1387.

{¶ 44} Plaintiff's action for civil conspiracy is barred because it is based upon a claim arising from a nucleus of facts that was the subject matter of the *Neumann* case. Specifically, plaintiff's motion for sanctions in the *Neumann* case was based upon the filing of a frivolous lawsuit against plaintiff in that case. Plaintiff's civil conspiracy claim in this action is based on the named defendants'

having conspired to file a "frivolous lawsuit" against plaintiff in the *Neumann* case. As the trial court noted, "[p]laintiff only has a civil conspiracy claim if there is an underlying cause of action for filing a frivolous lawsuit." (Apr. 6, 2000 Decision, 4.) See *Minarik v. Nagy* (1963), 8 Ohio App.2d 194, 196, 26 O.O.2d 359, 193 N.E.2d 280; *Kenty v. Transamerica Premier Ins. Co.* (Nov. 18, 1993), Franklin App. No. 93AP–478, 1993 WL 478056, reversed on other grounds (1995), 72 Ohio St.3d 415, 650 N.E.2d 863 (determining that without the existence of the underlying unlawful act, there can be no claim for civil conspiracy).

{¶ 45} In the *Grava* case, "a valid, final judgment rendered upon the merits" denied the sanctions motion and necessarily held that the filing of the *Neumann* lawsuit was not frivolous. See R.C. 2323.51. Thus, plaintiff's claim here arises out of the same transaction or occurrence that was the subject matter of the previous action. Because a final adjudication held that the filing of the *Neumann* lawsuit was not frivolous, res judicata bars plaintiff's instant claim for civil conspiracy, which is expressly based upon the filing of a frivolous lawsuit in the *Neumann* case. Id.

{¶ 46} Plaintiff contends that whether the *Neumann* case was frivolous as a matter of law is not dispositive, because his civil conspiracy claim may be characterized as one based on the underlying tort of "abuse of process" rather than the filing of a "frivolous lawsuit." Plaintiff's argument is not well taken. While facts supporting an abuse of process claim may be found in the instant complaint, plaintiff expressly bases his civil conspiracy claim on an underlying unlawful act of filing a frivolous lawsuit. See Complaint, ¶ 121 and 123.

{¶ 47} Plaintiff next contends that because three of the party defendants to his civil conspiracy claim were not parties in the *Neumann* case proceedings, the absence of mutuality of parties precludes application of the doctrine of res judicata or collateral estoppel to this case.

{¶ 48} As a general principle, res judicata and collateral estoppel apply only when the parties seeking to use a prior judgment, as well as the party against whom the judgment is being asserted, were parties to the original judgment or in privity with those parties. *Goodson v. McDonough Power Equip., Inc.* (1983), 2 Ohio St.3d 193, 2 OBR 732, 443 N.E.2d 978, paragraph one of the syllabus. The mutuality requirement, however, may be relaxed where justice reasonably requires it. Id. at 202, 2 OBR 732, 443 N.E.2d 978; *Bentley v. Grange Mut. Cas. Ins. Co.* (1997), 119 Ohio App.3d 93, 102, 694 N.E.2d 526. " 'The doctrine of res judicata may be said to adhere in legal systems as a rule of justice. Hence, the position has been taken that the doctrine of res judicata is to be applied in particular situations as fairness and justice require, and that it is not to be applied so rigidly as to defeat the ends of justice or so as to work an

injustice.'" *Goodson*, 2 Ohio St.3d at 202, 2 OBR 732, 443 N.E.2d 978, quoting 46 American Jurisprudence 2d 569–570, Judgments, Section 402.

{¶ 49} Although the named plaintiffs in the *Neumann* case were Neumann and Nickerson, plaintiff sought sanctions against not only them but also Ricotta and Holland personally, as their attorneys, pursuant to Civ.R. 11. Because Ricotta and Holland were personally targeted in the motion for sanctions and they and Lobe could have been joined as parties, they may be deemed "parties" to the sanctions motion for purposes of res judicata and collateral estoppel.

{¶ 50} Plaintiff finally contends that res judicata does not apply to this action because the motion for sanctions was decided without a hearing or any opportunity to introduce evidence. Plaintiff asserts that the prior judgment is therefore not binding in this proceeding because he did not have a full and fair opportunity to litigate the matters set forth in the sanctions motion.

{¶ 51} Plaintiff's argument is premised on the failure of the Cuyahoga County Common Pleas Court to hold a hearing on his sanctions motion in the *Neumann* case. The failure of the common pleas court to hold a hearing on the sanctions motion was asserted as error in plaintiff's appeal of the common pleas court's denial of his sanctions motion. The Eighth District Court of Appeals expressly rejected plaintiff's assertion, holding that the trial court was under no obligation to hold a hearing where it was *denying*, rather than imposing, sanctions. *Neumann v. Shimko*, supra. This court has similarly held that R.C. 2323.51 does not require a trial court to hold a hearing before denying a motion for an award of sanctions. See *Justice v. Lutheran Soc. Serv. of Cent. Ohio* (1992), 79 Ohio App.3d 439, 444, 607 N.E.2d 537, jurisdictional motion overruled, 65 Ohio St.3d 1421, 598 N.E.2d 1171.

{¶ 52} Notably, plaintiff did not seek that the Ohio Supreme Court review the Eighth District Court of Appeals' ruling in the *Neumann* case. Because plaintiff failed to do so, he is now precluded from collaterally attacking the validity of the Cuyahoga judgment through the present litigation. *Upper Arlington v. Brewster* (Jan. 20, 1998), Franklin App. No. 97APE08–1003, 1998 WL 22079. See, also, *Cleveland v. Ohio Dept. of Mental Health* (1992), 84 Ohio App.3d 769, 775, 618 N.E.2d 244, jurisdictional motion overruled (1993), 66 Ohio St.3d 1497, 613 N.E.2d 239 (noting that res judicata is applicable to a judgment which is merely voidable as having reached an incorrect conclusion; the judgment is not open to collateral attack but only to correction on direct appeal).

{¶ 53} Based on the foregoing, we conclude that the trial court did not err in finding plaintiff's civil conspiracy claim barred by res judicata and collateral estoppel. Accordingly, plaintiff's second assignment of error is overruled.

{¶ 54} In his third assignment of error, plaintiff asserts that the trial court erred in granting summary judgment on Counts II through VI and VIII through X of plaintiff's complaint on the ground that the claims were barred by res judicata, having been disposed of by the trial court, and affirmed by this court, in the initial lawsuit. See *Shimko,* supra, 124 Ohio App.3d 336, 706 N.E.2d 354. Plaintiff does not contend that the trial court did not dismiss the counts on the merits in the initial action, the dismissed claims being his due process, equal protection, and impairment of contract claims in Counts II through VI, and VIII and IX of the refiled complaint. Nor does plaintiff suggest that this court did not affirm the trial court's dismissal of the claims in its review of the trial court's decision. Rather, plaintiff contends that no "final judgment" was entered with regard to the claims set forth in the initial complaint. He thus argues that res judicata does not apply because plaintiff voluntarily dismissed all the claims in the initial action pursuant to Civ.R. 41(A) after this court remanded the case but before the trial court decided the remaining issue in the initial action.

{¶ 55} Civ.R. 41(A), under which plaintiff dismissed his initial action, provides that "a plaintiff, without order of court, may dismiss all claims asserted by that plaintiff against a defendant by * * * filing a notice of dismissal at any time before the commencement of trial * * *." Relying on the Ohio Supreme Court's decision in *DeVille Photography, Inc. v. Bowers* (1959), 169 Ohio St. 267, 8 O.O.2d 281, 159 N.E.2d 443, plaintiff contends that res judicata does not apply in this case, because " '[w]here an action or proceeding is dismissed without prejudice, rulings preceding the final judgment or decree of dismissal are, as a general proposition, not capable of becoming res judicata.' " Id. at 272, 8 O.O.2d 281, 159 N.E.2d 443, quoting 149 A.L.R. 561. Plaintiff notes that "[a] dismissal without prejudice leaves the parties as if no action had been brought at all." Id. Plaintiff argues that because he voluntarily dismissed his initial action before the common pleas court could hear one issue on remand, the rulings of the common pleas court, this court, and the Supreme Court on the other issues in that initial action are without effect.

{¶ 56} The effect of res judicata in a factually analogous context was explained in *Phung v. Waste Mgt., Inc.* (1994), 71 Ohio St.3d 408, 644 N.E.2d 286. In *Phung,* the trial court dismissed the plaintiff's wrongful-discharge and intentional-infliction-of-emotional-distress claims. The court of appeals affirmed the dismissal of the wrongful-discharge claim, reversed the dismissal of the intentional-infliction-of-emotional-distress claim, and remanded the cause to the trial court. The Supreme Court denied the plaintiff's motion to certify the record. On remand, the common pleas court ultimately entered judgment for the employer on the intentional-infliction-of-emotional-distress claim. The court of appeals affirmed in part and reversed in part.

{¶ 57} On a motion to certify, the Supreme Court set forth the rule regarding the impact of res judicata when judgment is entered in favor of a defendant: " 'A valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim.' " Id. at 412, 644 N.E.2d 286, quoting 1 Restatement of the Law 2d, Judgments (1982), Section 19. Applying that rule, the court determined that it was irrelevant that its action in denying certification of the record was not a final disposition of the entire case. Phung, supra. The court noted that " '[a] judgment may be final in a res judicata sense as to a part of an action although the litigation continues as to the rest.' " Id., quoting Restatement of the Law 2d, Judgments, supra, at 134, Section 13, Comment e. The court held that "[w]hen this court overruled [plaintiff's] motion to certify, res judicata precluded the relitigation of his wrongful-discharge claim but allowed his intentional-infliction-of-emotional-distress claim to continue." Id.

{¶ 58} Similarly, in this case, this court affirmed the trial court's judgment in the initial action dismissing plaintiff's due process, equal protection, and impairment-of-contractual-rights claims, and reversed and remanded that portion of the judgment dismissing plaintiff's claim of right to a jury trial. As in Phung, when the Supreme Court dismissed the parties' appeal of the judgment, the remanded right-to-jury-trial claim was allowed to continue. However, res judicata precluded relitigation of the remaining claims alleging impairment of due process, equal protection, and contractual rights, and the trial court's judgment in the initial action became valid and final as to those claims.

{¶ 59} Res judicata also operates to bar plaintiff's "of counsel" claim, Count X in the refiled complaint, that was not presented in the initial complaint. In that claim, plaintiff alleges that Lobe was "of counsel" to plaintiff on the cases giving rise to the fee disputes between plaintiff and Lobe, and plaintiff asserts that DR 2–107(B) does not apply to "of counsel" arrangements.

{¶ 60} The "of counsel" claim arises "out of the transaction or occurrence that was the subject matter of the previous action," Grava at syllabus, and is merely a new theory by which plaintiff attempts to limit the applicability of DR 2–107(B) to his fee dispute with Lobe. A new legal theory does not create a new transaction. Id. at 382, 653 N.E.2d 226, citing Comment c to Section 24 of Restatement of Judgments, supra, at 200. Further, plaintiff could have litigated the issue in his first lawsuit against Lobe. Accordingly, although this claim was not raised in the initial lawsuit, the claim is barred by res judicata. Grava at 382, 653 N.E.2d 226; Natl. Amusements, supra.

{¶ 61} Because the trial court did not err in concluding that Counts II through VI and VIII through X of the refiled complaint were barred by res judicata, plaintiff's third assignment of error is overruled.

{¶ 62} In his final and fourth assignment of error, plaintiff asserts that the trial court erred in overruling plaintiff's motion for leave to amend the refiled complaint to conform to evidence that plaintiff and Lobe never had a written agreement between them regarding their fee arrangements. Relying on two Eighth District Court of Appeals decisions, plaintiff contends that because defendant Lobe admits to no written agreement, the bar associations do not have authority to proceed with arbitration proceedings regarding their fee dispute. See *Hohmann, Boukis & Curtis Co., L.P.A. v. Brunn Law Firm Co., L.P.A.* (2000), 138 Ohio App.3d 693, 742 N.E.2d 192, and *Schroeder v. DeVito* (2000), 136 Ohio App.3d 610, 737 N.E.2d 559.

{¶ 63} Plaintiff's reliance on the foregoing decisions is unavailing because the cases are factually distinguishable from the instant case. In *Hohmann*, observing that DR 2–107 "specifically regulates lawyers who are not in the same firm," the appellate court held that a referral to the bar association for arbitration was unwarranted, as the dispute was outside the intended scope of DR 2–107(B) where it not only arose out of the attorneys' relationship when they were in the same firm but involved issues beyond the fee agreement itself. *Hohmann* at 696–697, 742 N.E.2d 192. In contrast to *Hohmann*, the plaintiff and Lobe were never in the same law firm, and the dispute between them does not involve issues beyond their fee agreement.

{¶ 64} In *Schroeder*, the appellate court found DR 2–107(B) inapplicable because the "case is not a dispute under a fee agreement between the parties as to how the fees are divided, but, rather, a dispute regarding the actual existence of such an agreement." Id. at 615, 737 N.E.2d 559. In the case at bar, plaintiff and Lobe do not dispute that an oral fee agreement exists between them. Their dispute involves the substance of the agreement.

{¶ 65} In arguments before this court, plaintiff has acknowledged that a fee agreement need not be in writing for DR 2–107(B) to apply. Plaintiff nevertheless contends that a declaratory judgment should issue in this case holding DR 2–107(B) inapplicable to his fee dispute with Lobe. If plaintiff believes that his fee dispute with Lobe is not subject to DR 2–107(B), plaintiff should dismiss the refiled complaint, not amend it, because the premise for its claim of unconstitutionality of DR 2–107(B) rests on applicability of the rule. Further, if DR 2–107(B) does not apply to the fee dispute between plaintiff and Lobe, plaintiff lacks standing in this private action to assert the unconstitutionality of the rule, where he would be neither subject to, nor aggrieved by, operation of the rule. See *Palazzi v. Estate of Gardner* (1987), 32 Ohio St.3d 169, 512 N.E.2d 971, syllabus; *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 469–475, 715 N.E.2d 1062. For the foregoing reasons, plaintiff's fourth assignment of error is overruled.

{¶ 66} Having overruled all of plaintiff's assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

BOWMAN and TYACK, JJ., concur.