[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY. {¶ 1} This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
 {¶ 2} In May 2001, plaintiff-appellee Carl Kaeser brought a lawsuit against defendants-appellees the city of Cincinnati, the Cincinnati Board of Zoning Appeals ("BZA"), Theresa Conover (a member of the BZA), Rosanna Parlier (president of Linwood Community Council), Marzetta Goldsmith (a Cincinnati zoning inspector), James Huhn (president of the BZA), Reginald Lyons (supervisor of the Cincinnati zoning administration), Linwood Community Council, and John Doe. In October 2001, Kaeser filed an amended complaint. In the amended complaint, Kaeser advanced the following theories: (1) fraud, (2) violation of state and federal civil rights, and (3) declaratory judgment.
 {¶ 3} The city of Cincinnati, the BZA, Conover, Goldsmith, Huhn, Lyons, and John Doe moved to dismiss the amended complaint. The motion was based on theories of (1) res judicata and collateral estoppel; (2) the statute of limitations; (3) tort immunity; (4) qualified immunity; (5) failure to state a claim upon which relief could be granted; and (6) vexatious litigation. Linwood Community Council and Parlier later joined in the motion to dismiss.
 {¶ 4} In June 2002, the trial court converted the motion to dismiss into a motion for summary judgment and gave the parties time to file appropriate evidence and memoranda. In October 2002, the trial court granted summary judgment to all of the defendants after determining that all of Kaeser's claims were barred by the doctrines of res judicata and collateral estoppel.
 {¶ 5} On appeal, Kaeser now maintains that the trial court erred when dismissing his complaint, primarily because the parties and the issues were different from those in his previous lawsuit against the BZA. He points out that the first lawsuit involved only himself and the BZA, while his second lawsuit involved the city and its employees, Goldsmith, Lyons, and John Doe, the BZA and its employees, Conover and Huhn, and the Linwood Community Council and its president, Parlier. Kaeser also contends that the issues in his first lawsuit concerned whether Kaeser had established a lawful conforming use of his property prior to a zone change, while the second lawsuit related to whether the defendants had acted fraudulently and whether his civil rights had been violated.
 {¶ 6} The doctrine of res judicata encompasses both claim preclusion and issue preclusion.[1] With regard to claim preclusion, a final, valid judgment on the merits is conclusive of all claims arising out of the transaction or occurrence that is the subject matter of a lawsuit.[2] A final judgment between parties to litigation is conclusive as to all claims that are or might be litigated in the lawsuit.[3] Issue preclusion, often referred to as collateral estoppel, precludes relitigation of issues actually litigated in a prior suit between the same parties.[4] Res judicata and collateral estoppel apply when "the parties seeking to use a prior judgment, as well as the party against whom the judgment is being asserted, were parties to the original judgment or in privity with those parties."[5] However, the mutuality requirement may be relaxed where justice reasonably requires it.[6]
 {¶ 7} Kaeser's action for fraud, civil-rights violations, and declaratory judgment was barred because it was based upon claims arising from a nucleus of facts that were the subject matter of the first case against the BZA. Kaeser's initial lawsuit arose out of his appeal from a decision of the BZA upholding the issuance of a zoning violation. Kaeser had been charged with unpermitted automobile storage in an R-4 Zone. Kaeser appealed the BZA's decision under R.C. 2506.04 and moved for a de novo hearing pursuant to R.C. 2506.03. In his motion for a new hearing, Kaeser alleged that he was unable to present his position at the 1997 BZA hearing; that he was denied the opportunity to offer and examine witnesses and present evidence; that he was unable to cross-examine witnesses; that he was unable to refute evidence admitted against him; that the testimony against him was not given under oath; and that Conover had testified against him in violation of his due-process rights.
 {¶ 8} In March 1998, the magistrate denied Kaeser's motion for a de novo hearing, finding that Kaeser had been given a full hearing where he had had the opportunity to present his position, offer and examine witnesses, present evidence, cross-examine witnesses, refute evidence offered against him, and proffer evidence into the record. The magistrate also found that the testimony had been given under oath. Finally, the magistrate declined to evaluate whether Conover's testimony had tainted the proceeding because it did not involve one of the circumstances requiring the de novo review set forth in R.C. 2506.03.
 {¶ 9} In October 1998, the magistrate considered the merits of Kaeser's appeal, including his contention that Conover's testimony had tainted the underlying proceeding before the BZA. After evaluating the record, including Conover's testimony, the magistrate found that the BZA's decision was not unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence in the whole record under R.C. 2506.04. Accordingly, Kaeser's appeal from the BZA was denied.
 {¶ 10} In May 1999, following a hearing on Kaeser's motion, the trial court again revisited the propriety of Conover's testimony. The court determined that Conover's testimony, while irregular, had not given rise to plain error, because Conover had recused herself from voting at the hearing. The court ultimately found that, even if there was error, it was harmless due to the other evidence presented against Kaeser. Given that and the evidence in the record, the trial court held that the BZA's finding was supported by a preponderance of substantial, reliable, and probative evidence, and the trial court adopted the October 1998 decision of the magistrate.
 {¶ 11} In March 2000, this court affirmed the judgment of the trial court, holding that the trial court had not erred in overruling Kaeser's motion for a de novo hearing or in finding that Kaeser had not been deprived of due process by Conover's testimony, and that the BZA's decision was not against the manifest weight of the evidence.
 {¶ 12} In support of Kaeser's fraud claim in the current lawsuit, Kaeser contended that Conover and the city of Cincinnati, by and through the BZA and its agents and employees, had defrauded him by allowing Conover to falsely testify against Kaeser at the BZA hearing and altering a videotape. He also contended that Goldsmith, Parlier, the Linwood Community Council, Lyons, and John Doe had acted fraudulently by withholding information that established that Kaeser had a nonconforming use of his property. In his second and third claims, Kaeser alleged that the Linwood Community Council, the BZA, and the city of Cincinnati had violated his civil rights to be free from an unlawful taking and that he had been denied procedural and substantive due process and equal protection. Finally, his fourth claim requested a declaratory judgment that he had established a valid nonconforming use on his property.
 {¶ 13} Based on Kaeser's assertions in the complaint, we hold that his fraud claim, his civil-rights claims, and his request for declaratory judgment arose out of the same transaction or occurrence that was the subject matter of the previous action and could have or should have been raised in the first lawsuit. The initial lawsuit centered on whether Kaeser had established a valid nonconforming use on his property and whether Conover's testimony had tainted the BZA proceeding. These same issues were material to the resolution of Kaeser's claims for relief in his second lawsuit. Furthermore, while only the BZA was a party to the original lawsuit, justice reasonably requires that we relax the mutuality requirement here. In the second lawsuit Kaeser sought relief not only against the BZA, but also against its employees, Huhn and Conover, the city of Cincinnati and its employees, Goldsmith, Lyons, and John Doe, and the Linwood Community Council and its president, Parlier. These parties were either in privity with the BZA or could have been joined as parties in the first lawsuit and were, therefore, deemed "parties" to the initial appeal for the purposes of res judicata.
 {¶ 14} When viewing the evidence in the light most favorable to the defendants, we hold that, because res judicata barred Kaeser's claims for fraud, civil-rights violations, and declaratory judgment, there remained no genuine issue of material fact.[7] As a result, the trial court did not err in granting summary judgment to the BZA, the city of Cincinnati, the Linwood Community Council, Conover, Parlier, Goldsmith, Huhn, Lyons, and John Doe.[8] We, therefore, overrule Kaeser's assignment of error and affirm the judgment of the trial court.
 {¶ 15} Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Sundermann, P.J., Gorman and Winkler, JJ.
[1] See Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, 381,653 N.E.2d 226.
[2] See id.
[3] See id. at 382.
[4] See Goodson v. McDonough Power Equip., Inc. (1983), 2 Ohio St.3d 193,443 N.E.2d 978, paragraph one of the syllabus.
[5] Shimko v. Lobe, 152 Ohio App.3d 742, 2003-Ohio-2200, 790 N.E.2d 335, at ¶ 48.
[6] See id.
[7] See Temple v. Wean United Inc. (1977), 50 Ohio St.2d 317, 327,364 N.E.2d 267.
[8] See Civ.R. 56(C).