NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0602n.06

No. 10-3446

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Aug 23, 2011*

LEONARD GREEN, Clerk

TOLEDO MACK SALES & SERVICE,      )
INC.; DAVID YEAGER; SALLY          )
YEAGER,                            )
                                   )
        Plaintiffs–Appellants,     )    ON  APPEAL  FROM  THE  UNITED
                                   )    STATES DISTRICT COURT FOR THE
v.                                 )    NORTHERN DISTRICT OF OHIO
                                   )
MACK TRUCKS, INC.,                 )
                                   )
        Defendant–Appellee.        )


Before: NORRIS, GIBBONS, and GRIFFIN, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.**  Plaintiffs-appellants Toledo Mack Sales &

Service, Inc., David Yeager, and Sally Yeager (together "TMSS") appeal the district court's decision

to dismiss their lawsuit against Mack Trucks, Inc. ("MTI") pursuant to Federal Rule of Civil

Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.  On appeal, TMSS

argues that the district court erred by ruling: (1) that MTI did not breach its contract with TMSS by

paying for truck parts valued at approximately $828,000 in credit against a judgment instead of in

cash, (2) that TMSS's claim for conversion of property was duplicative of its claim for breach of

contract, (3) that TMSS failed to state a claim for abuse of process, and (4) that TMSS failed to state

a claim under the Ohio Motor Vehicle Dealers Act  ("OMVDA").  For the reasons that follow, we

affirm in full the judgment of the district court.

I.

This case involves the latest in a string of lawsuits between TMSS and MTI. TMSS was a franchised dealer of Mack Trucks in Toledo, Ohio, from 1982 to 2006. The two parties acted according to a "Distributor Agreement" signed in 1986. Eventually, disagreement over TMSS's decision to compete with other MTI dealerships located beyond its assigned geographical "area of responsibility" led TMSS to file a federal anti-trust lawsuit in the Eastern District of Pennsylvania. MTI counter-claimed for misappropriation of trade secrets.

During discovery for the anti-trust case, MTI learned that TMSS had provided a database known as MACSPEC 2001 to PAI, a rival manufacturer of replacement parts for Mack trucks. PAI reverse engineers MTI parts to create imitation parts, and the MACSPEC 2001 database explained how MTI parts fit together in custom-built Mack trucks. In light of this discovery, MTI issued a letter to TMSS terminating its franchise relationship.

TMSS protested MTI's action with the Ohio Motor Vehicle Dealers Board ("OMVDB"). The OMVDB and the Franklin County (Ohio) Court of Common Pleas found that MTI did not have "good cause" to terminate the relationship. On appeal, however, the Tenth District Court of Appeals reversed this decision, finding TMSS's divulging of MTI's trade secrets gave MTI cause to terminate the relationship. TMSS filed a motion for reconsideration in which it contended, among other things, that MTI had misled the court. TMSS asserted that PAI was not a competitor of MTI; rather, TMSS claimed the two parties routinely did business together. To illustrate this cooperative relationship, TMSS submitted that once, when it had ordered a part from MTI, the part arrived in a PAI box. The state appeals court rejected TMSS's argument for reconsideration, finding, in relevant

2

part, that TMSS's new evidence was not admissible because the appeals court was "bound by the record before it." TMSS reiterated its new factual assertion when it filed a motion for relief from judgment before the Common Pleas Court, but the court denied TMSS's motion. After the Ohio Supreme Court denied review, the Tenth District's decision became final, and MTI terminated TMSS's franchise on December 13, 2006.

In the meantime, TMSS's federal anti-trust suit moved forward. *See Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, No. Civ. A. 02-CV-4373, 2005 WL 724117 (E.D. Pa. Mar. 29, 2005). After the Ohio Court of Appeals judgment became final, the Pennsylvania district court applied the doctrine of *res judicata* and found for MTI on its misappropriation of trade-secrets counter-claim. *See Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, No. Civ. A. 02-4373, 2007 WL 5256959, at *1 (E.D. Pa. Feb. 16, 2007). MTI prevailed in the anti-trust case; on the counter-claim, the jury—having been charged only with determining damages—awarded MTI more than $11 million, which the district court remitted to $1.6 million. *Id.* at *4.

On appeal, the Third Circuit affirmed the district court's disposition of MTI's counter-claim. *Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, 530 F.3d 204, 229–30 (3d Cir. 2008.) Following additional litigation, the Third Circuit also affirmed a jury's verdict against TMSS on its anti-trust claims. *Toledo Mack Sales & Serv., Inc., v. Mack Trucks, Inc.*, 386 F. App'x 214, 216 (3d Cir. 2010).

Following termination of the franchise, and pursuant to a provision within the Distributor Agreement, MTI notified TMSS that it was repurchasing TMSS's inventory of Mack vehicles and parts. MTI took possession of, and paid cash for, the remaining vehicles that TMSS had in stock.

MTI also took possession of TMSS's parts inventory and acknowledged a debt of approximately $828,000. However, MTI did not pay TMSS in cash but rather credited the $828,000 against the $1.6 million trade-secrets judgment.

In the present action, TMSS challenges MTI's form of payment. TMSS alleges breach of contract, conversion, abuse of process, and violation of the OMVDA. The district court dismissed the lawsuit for failure to state a claim upon which relief can be granted.

This appeal followed.

## II.

We review *de novo* a district court's decision to dismiss under Rule 12(b)(6). *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006). In assessing a complaint for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accept the plaintiff's factual allegations as true, and determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citation omitted). A plaintiff's complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pursuant to its provisions, we construe the contract according to Pennsylvania law. We decide TMSS's tort claims under Ohio law.

## III.

TMSS's first claim is that the district court erred in dismissing its claim for breach of contract. To plead a breach of contract three elements are necessary: "(1) the existence of a contract,

4

including its essential terms (2) a breach of duty imposed by the contract and (3) resultant damages."

*Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. Ct. 2004) (quoting *J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc.*, 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002)) (internal quotations and alterations omitted). The district court found that TMSS failed to state a claim for breach of contract because MTI fulfilled its contractual obligations by paying TMSS in credit, which the district court found the contract permitted MTI to do. We agree.

First, we note that under Pennsylvania law a party may set off an obligation owed to another. *Beaver Valley Alloy Foundry, Co. v. Therma-Fab, Inc.*, 814 A.2d 217, 220 (Pa. Super. Ct. 2002) ("[T]he common-law principle . . . allows a non-breaching party to set off its damages against the contract balance."); *Am. Radiator Co. v. Modern Utils. Co.*, 164 A. 925 (Pa. Super Ct. 1933) ("'Where there is a special equity to be subserved, and no equity of third parties to be injured, a set-off will be allowed upon equitable principles.'" (quoting *Hibert v. Lang*, 442 A. 1004, 1005 (Pa. 1895))). While we find no case law directly on point, we see no reason the common law doctrine of set-off does not apply in this situation, where MTI is owed a definite amount from a valid judgment and TMSS is insolvent. *See Royal Bank of Penn. v. Selig*, 644 A.2d 741, 744 (Pa. Super. Ct. 1994) ("Immediately upon the maturity of a debt owed by a depositor, the bank's right to set-off, by operation of law, extinguishes the depositor's rights to the account."). Because the Distributor Agreement does not prevent set-off, MTI followed common law principles permitted by the contract when it credited the parts purchase against the judgment.[1]

---

[1]When asked to respond to this point about set-off during oral argument, counsel for TMSS spoke about "recoupment" and cited TMSS's Reply Brief, as if recoupment and set-off are the same

Additionally, while the contract is constructed so that MTI will always be paid in cash, no provision vests TMSS with a similar right. In § 20, the contract ensures that TMSS can *never* pay MTI in any method other than cash. ("The Distributor agrees not to deduct from *any* payment to the Company the amount of any credits for returned material or parts, warranty claims, [etc.] . . . or otherwise without the Company's prior written approval.") (emphasis added). In contrast, the contract provides in multiple provisions that MTI may pay in credit. The contract explicitly provides, for instance, that when TMSS returns defective paid parts to MTI, MTI will satisfy the debt by payment in credit. Other provisions governing payments further protect MTI's right to pay in credit, although MTI may choose to pay in cash. When MTI compensates TMSS as part of its guaranteed price protection, it may pay in credit. A provision for credit to customers—in which money is technically owed to customers but will be conveyed via TMSS—states that MTI may reimburse customers in cash or credit and requires that TMSS disburse to customers any funds it should receive within thirty days. Even the very provision at issue notes that repayment for parts will have credits MTI has already extended to TMSS deducted. In all instances, therefore, TMSS is obligated to pay MTI in cash while MTI reserves the right to pay in credit. The contract protects the right of set-off but limits that right to MTI.

---

doctrine. They are separate doctrines. While TMSS is correct that a defense of recoupment must arise out of the same transaction, *see Black's Law Dictionary* 618, 1388 (9th ed. 2009), set-off applies to "a transaction independent of the plaintiff's claim." *Id.* at 1496 (9th ed. 2009); *see also id.* at 618 (9th ed. 2009). TMSS therefore offers no argument for why set-off should not apply in this instance.

The district court found this arrangement was justified by MTI's rightful concern with "having to bear the risk of a distributor's insolvency." The contract is constructed to favor MTI in the advent, which has now come to pass, of TMSS's insolvency. Because TMSS never has the right to receive cash, while MTI has the right to set off in credit, we find MTI acted within its common law and contractual rights by paying TMSS in credit against the $1.6 million judgment.

IV.

TMSS's second claim is that MTI converted the parts inventory. We find the district court properly dismissed this claim as duplicative of the breach of contract claim.

Under Ohio law, "the existence of a contract action . . . excludes the opportunity to present the same case as a tort claim. A tort claim based upon the same actions [as the contract claim] . . . will exist . . . only if the breaching party also breaches a duty owed separately from that created by the contract." *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E. 2d 1261, 1270 (Ohio Ct. App. 1996) (quoting *Wolfe v. Continental Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981)) (internal quotations and citation omitted). TMSS argues that MTI's duty not to convert the parts inventory is separate from the contractual duty, but the only reason MTI repurchased the parts inventory is because § 28 of the Distributor Agreement *requires* MTI to do so. ("If this Agreement be terminated by the Company, the Company will . . . repurchase [the parts] from the Distributor[.]"). Moreover, the same section of the Distributor Agreement also requires that TMSS sell the parts back to MTI. ("The Distributor agrees to resell [the parts] to the Company[.]"). Because the parts transaction took place because the contract required that it take place, TMSS cannot argue that MTI had a duty separate from the contract.

7

Once the district court correctly determined that "[MTI's] obligation to purchase TMSS's parts inventory arose from the Distributor Agreement," it was established that the conversion claim is based on the same actions as the contract claim. The conversion claim is therefore duplicative of the breach of contract claim and is not permitted under Ohio law. We therefore find that the district court did not err in finding that TMSS has failed to state a claim for conversion of the parts inventory.

V.

TMSS's third claim is that MTI abused process in the distributorship termination litigation. Under Ohio law, the elements of the tort of abuse of process are: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 626 N.E. 2d 115, 118 (Ohio 1994) (internal citation omitted). Because an "ulterior purpose" is required, the tort does not apply "where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Id.* at 118 n.2 (internal quotation omitted). The Ohio Supreme Court has clarified that abuse of process arises when "someone attempts to achieve through use of the court that which the court is itself powerless to order." *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 662 N.E. 2d 9, 14 (Ohio 1996).

We find that TMSS failed to state a claim. TMSS alleges that MTI aimed to terminate the distributorship via litigation; terminating this relationship, however, was the exact purpose of the

first Ohio state lawsuit. There is no ulterior purpose when the matter at issue was the exact matter "'for which [the proceedings were] . . . designed.'" *Yaklevich*, 626 N.E. 2d at 118.

Although TMSS now argues that its abuse of process claim alleged more than just an end to the distributorship—namely that MTI abused process so as to win its counter-claim in the anti-trust suit, to destroy TMSS as a business, and to bankrupt the Yeagers—this argument is meritless. The termination of the distributorship put TMSS out of business, but that result was the "authorized conclusion" of the state court litigation. Moreover, the end result was not something the court was "powerless to order" because the termination of the distributorship was the exact question at issue. Similarly, the Ohio court was not powerless to find for MTI in its trade secrets counter-claim. *See Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E. 2d 853, 861 (Ohio 1999) ("Misappropriation of trade secrets is a recognized tort in Ohio for which damages may be obtained."). An abuse of process claim arises only when "someone attempts to achieve through use of the court that which the court is itself powerless to order." *Robb*, 662 N.E. 2d at 14. Here, because the Ohio courts had the power to end the distributorship—thereby putting TMSS out of business—and to grant victory on a misappropriation of trade secrets claim, TMSS has failed to allege an abuse of process claim. We therefore affirm the district court's dismissal of the abuse of process claim.

VI.

TMSS's final claim is that MTI violated the OMVDA by failing to act in good faith, Ohio Rev. Code § 4517.59(A), and by failing to pay TMSS within thirty days for warranty credits that were owed. Ohio Rev. Code § 4517.59(J).[2]

We have previously held that under § 4517.59(A) a plaintiff "cannot complain that [defendant] violated the duty of good faith simply because [defendant] exercised its clearly expressed contractual rights." *Bill Call Ford, Inc. v. Ford Motor Co.*, 48 F.3d 201, 207 (6th Cir. 1995). On appeal, TMSS restates its breach of contract and conversion arguments but offers no explanation for why *Bill Call Ford* does not prevent an OMVDA claim in light of MTI's exercise of its contractual rights. TMSS also argues that the allegations in its abuse of process claim are enough to state a claim for failure to act in good faith under the OMVDA, but an OMVDA claim was part of TMSS's federal anti-trust case and was explicitly rejected by a jury. Although TMSS now makes slightly different allegations than it did in the anti-trust case, under Ohio law "'an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or *might have been* litigated in a first lawsuit.'" *Shimko v. Lobe*, 790 N.E. 2d 335, 344 (Ohio Ct. App. 2003) (quoting *Grava v. Parkman Twp.*, 653 N.E. 2d 226, 229 (Ohio 1995)). TMSS's § 4517.59(A) claim is therefore barred by controlling case law and *res judicata*. We therefore find the § 4517.59(A) claim was properly dismissed by the district court.

---

[2]Since TMSS's complaint was filed, Ohio Rev. Code § 4517.59(A) has been recodified at § 4517.59(A)(1) and Ohio Rev. Code § 4517.59(J) at § 4517.59(A)(11). Act of June 10, 2010, 2010 Ohio Laws File 42.

As to its § 4517.59(J) claim, TMSS argues it sufficiently pled that MTI owes it money for "warranty credits." Section 4517.59(J) provides that a franchisor must pay a franchisee within thirty days for any claim for labor under § 4517.52(B), which provides that a franchisor must compensate franchisees for "labor and parts used to fulfill warranty . . . obligations." TMSS argues that MTI acknowledged owing money for "warranty credits" as part of the $828,000 owed. We find this argument self-defeating. The "warranty credits" are part of the $828,000, which TMSS pled that MTI paid in credit instead of cash. Because TMSS was allowed to pay in credit, by TMSS's own pleading, MTI has satisfied any debt it owes in warranty credits through its credit against the anti-trust judgment. We therefore find that TMSS has also failed to state a claim under § 4517.59(J).

## VII.

For the foregoing reasons, we affirm in judgment of the district court.